## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAMAYRA MADISON, *as parent & natural guardian of* Z.M., *a minor, & in her own right,* & MARTIN & TRACEY STEWART, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| | : | |
| BETHANNA, INC. d/b/a BETHANNA & CITY OF PHILADELPHIA, | : | NO. 12-01330 |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                          May 23, 2012

  Currently pending before the Court is the Motion of Defendant Bethanna, Inc. d/b/a/ Bethanna ("Bethanna" or "Defendant") to Dismiss Plaintiffs' Complaint in its entirety, or, in the alternative, to strike specific allegations from the Complaint. For the following reasons, the Motion is granted in part and denied in part.

## I.  FACTS AND PROCEDURAL HISTORY

  This action stems from an unfortunate series of events related to the sexual abuse of a two-year-old minor, Z.M.[1] Plaintiffs Martin Stewart and Tracey Stewart ("the Stewarts") are the adoptive parents of Dalon Holmes ("Holmes") and the maternal grandparents of victim, Z.M. (Compl. ¶¶ 3, 17, 18.) Plaintiff Shamayra Madison ("Madison") is the biological daughter of the Stewarts and the

---

[1] In several documents filed before the Court, the minor is identified by his full name. However, due to the sensitive factual nature of this case, the Court will identify the minor individual solely by his initials, rather than full name.

mother of Z.M.  (Id. ¶¶ 3, 4.)  Defendant Bethanna is a nonprofit organization that facilitates adoption and foster care services in Philadelphia, Pennsylvania.  (Id. ¶ 5.)  The City of Philadelphia is also named as a municipal defendant, but is not a party to the instant Motion.  (Id. ¶ 7.)  Holmes is not a defendant in this civil action, but his criminal misconduct lies at the heart of Plaintiffs' Complaint.

According to the facts set forth in the Complaint, Holmes had a history of sexual abuse as a child.  Specifically, his birth mother and various unidentified adult males molested him during the time that he lived with his mother.  (Id. ¶ 21.)  For reasons that remain unknown, Holmes was removed from his mother's home by the City of Philadelphia's Department of Human Services in 2007.  (Pl.'s Resp. Opp'n 2.)

On November 18, 2009, the Stewarts adopted then thirteen-year-old Holmes, their nephew. (Compl. ¶ 17.)  The adoption process was financially and administratively facilitated by the City of Philadelphia and Bethanna.  (Id. ¶¶ 13, 17.)  Prior to adopting Holmes, the Stewarts inquired multiple times about his background and whether or not he had previously been sexually abused, but were repeatedly informed by City and Bethanna personnel that he did not have a history of sexual abuse.  (Id. ¶¶ 15, 16.)  This information was apparently important to the Stewarts because, at the time of the adoption, they already had several young children living in their home, including their two-year-old grandson, Z.M.  (Id. ¶¶ 14, 25–28.)

On August 29, 2010, Holmes raped and sexually molested Z.M.  (Id. ¶ 18.)  The Stewarts immediately reported the incident to legal authorities, and Holmes was arrested and criminally charged with various crimes related to the rape, sexual assault, indecent assault, and endangerment of the welfare of minor Z.M. (Id. ¶¶ 19, 20.)  Holmes was removed from the Stewarts's home on November 10, 2010.  (Id. ¶ 20.)  The Stewarts have since relinquished their custodial rights of

Holmes and he remains a ward of the Commonwealth of Pennsylvania.  (Pl.'s Resp. Opp'n 3.)

Plaintiffs initiated the instant civil action by filing a Complaint in the Philadelphia Court of Common Pleas, asserting seven counts against Defendant Bethanna: (1) fraud/intentional misrepresentation (Count I); (2) negligent misrepresentation (Count II); (3) negligent failure to disclose (Count III); (4) negligence (Count IV); (5) negligent infliction of emotional distress (Count V); (6) intentional infliction of emotional distress (Count VI); and (7) a violation of Plaintiffs' civil rights under 42 U.S.C. § 1983 (Count VII).  Defendants[2] removed the case to federal court on March 14, 2012.  Defendant Bethanna filed the instant Motion to Dismiss on March 26, 2012.  Plaintiffs filed a Response in Opposition on April 13, 2012, and Defendant replied on May 7, 2012.  This issue is now ripe for judicial consideration.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555. It emphasized that it would not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In the subsequent case of Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim.  First, it noted that "the tenet that a court must accept as true all of the

---

[2] Defendant City of Philadelphia removed the case to federal court on March 14, 2012.

allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 678–79.  Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

Notwithstanding the foregoing, nothing in Twombly or Iqbal has altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review.  Arner v. PGT Trucking, Inc., No. Civ.A.09-0565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-0626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008).  Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations.  Fed. R. Civ. P. 8; Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

Bethanna moves to dismiss Plaintiffs' Complaint in its entirety due to a lack of foundation under Rule 12(b)(6).  Moreover, in the event that the Court does not dismiss the Complaint in its

4

entirely, Bethanna moves to dismiss specific counts and allegations from the Complaint, including Plaintiffs' claims based on: (1) negligence *per se*; (2) fraud/intentional misrepresentation; (3) negligent misrepresentation; (4) negligent failure to disclose; (5) negligent infliction of emotional distress; (6) intentional infliction of emotional distress; and (7) recklessness. Bethanna likewise asserts that none of the Plaintiffs have standing to pursue their claims against Bethanna. The Court considers each basis of dismissal separately below.

### A.      The Standing Claim[3]

In order to have constitutional standing under Article III of the U.S. Constitution, a party must first satisfy three requirements. See Bennett v. Spear, 520 U.S. 154, 167 (1997); Ne. Fl. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fl., 508 U.S. 656, 663 (1993). Specifically, the party seeking constitutional standing must show that it has: (1) suffered an "injury in fact" that is "real and immediate" and not merely "conjectural or hypothetical," City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983) (citations omitted); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); (2) that the injury is fairly traceable to the defendant's conduct, Allen v. Wright, 468 U.S. 737, 751 (1984); United States v. Hays, 515 U.S. 737, 743 (1995); and (3) that a favorable federal court decision is likely to redress the injury. Linda R.S. v. Richard D., 410 U.S. 614, 617–18 (1973); Warth v. Seldin, 422 U.S. 490, 505–06 (1975); Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 45–46 (1976).

---

[3] Defendant moves to dismiss for lack of standing and discusses its reasons for doing so toward the end of its Motion and supporting Memorandum. In fact, Defendant's lack of standing assertion is randomly placed between its requests that the Court strike the specific allegations from Plaintiffs' Complaint related to fraud/intentional misrepresentation and those related to recklessness. It is well established, however, that Article III standing is a threshold issue that should be addressed before issues related to the merits of a case. See Sierra Club v. Morton, 405 U.S. 727, 741 (1972); Warth v. Seldin, 422 U.S. 490, 498 (1975). As such, the Court addresses Defendant's standing claim first in its Discussion.

In the instant case, Defendant avers that Plaintiffs Madison and Z.M. lack standing because they did not suffer an injury in fact.  (Def.'s Mot. Dismiss 16.)  Bethanna argues that adoption agencies only owe a duty to adoptee children and the parties to the adoption under Pennsylvania law, and since neither Madison nor Z.M. participated in the adoption of Holmes, they did not suffer an injury.  (Id. 16, 17.)  This characterization, however, misconstrues the law governing standing.  More specifically, whether a plaintiff is entitled to *bring suit in the first instance* is a separate and distinct inquiry from whether a defendant is *liable* to the plaintiff pursuant to a defined legal duty.  See Bogus v. Am. Speech & Hearing Ass'n, 582 F.2d 277, 288 (3d Cir. 1978).

Moreover, the initial facts pled in Plaintiffs' Complaint indicate that Madison and Z.M. satisfy the requirements of constitutional standing.  First, both parties suffered an injury under these circumstances.  Z.M. suffered physical, psychological, and emotional injuries as a result of his sexual assault. (Compl. ¶ 45(a).) The Complaint further provides that Madison herself suffered "severe psychological harm, mental distress, [and] extreme embarrassment and humiliation" as a result of Z.M.'s molestation, and has and will likely continue to incur costs related to the medical treatment of Z.M.  (Id. ¶ 45(b–c).)[4]  As to the second element of standing—*i.e.*, that the party's injury be fairly traceable to the defendant's conduct—the basis of Plaintiffs' claims against Bethanna are that it knew or had reason to know of Holmes's history of abuse and proclivity to sexually assault another of his own accord, and failed to disclose or actively concealed this information from the Stewarts.  Thus, Plaintiffs aver that they would have declined to adopt Holmes into their home if they had such information.  (Id. ¶ 27.)  The logic of the argument follows that if Holmes had not been adopted into

---

[4] Although these alleged injuries are listed under Count I, a claim brought solely by the Stewarts, the language in ¶ 45 provides a list of injuries suffered by "Plaintiffs" collectively, whereas the remainder of the allegations in Count I specifically refer to "the Stewarts." Moreover, other Counts in the Complaint brought by all Plaintiffs refer to this earlier list of injuries.  (See generally id. ¶¶ 71, 85, 97.)

the Stewart's home, then Z.M. would not have been molested.  Thus, Madison and Z.M.'s claims are fairly traceable to Bethanna's conduct.  Finally, Z.M. and Madison seek monetary damages from Bethanna.  A favorable decision from this Court finding Bethanna liable and ordering it to compensate Plaintiffs could likely alleviate some degree of their alleged injuries.  As such, Madison and Z.M. satisfy the requirements of constitutional standing in this case.

Defendant also asserts that the Stewarts lack standing because they fail to satisfy the second prong of standing, *i.e.*, that the molestation of Z.M. was fairly traceable to Bethanna's conduct. (Def.'s Mot. Dismiss 17.)  The facts alleged in the Complaint, however, indicate to the contrary. Specifically, Plaintiffs aver that Bethanna knew or had reason to know of Holmes's prior history and abusive tendencies, and that it failed to disclose this information to the Stewarts prior to consummating the adoption.  (Compl. ¶¶ 21, 22.) According to the Stewarts, if they had received such knowledge, they would have declined to adopt Holmes and bring him into their home, thereby preventing the exposure of other young children in their care—most especially Z.M.—to potential harm.  (Id. ¶¶ 26–28.)  As such, Plaintiffs have pled a clear causal connection between Bethanna's alleged conduct and their injuries.

Based on the above, the Court finds that Plaintiffs have standing to assert claims against Defendant Bethanna.  Defendant's Motion on these grounds is therefore denied.

**B.    Motion to Strike the Complaint in its Entirety**

Bethanna moves to strike Plaintiffs' Complaint in its entirety on the grounds that "it fails to articulate appropriate facts with requisite specificity to sustain any of the alleged claims[.]" (Def.'s Mot. Dismiss 7.)  The heart of Defendant's argument is that the Complaint does not plead facts indicating that Holmes had a history of sexual abuse, that Bethanna knew or should have known of this alleged history, or that Holmes's abusive history should have been a "red flag" to Bethanna that

7

he was likely to sexually assault another child.  (Id.)  To the extent that Plaintiffs' Complaint does reference any such facts, Bethanna avers that such statements are nothing more than mere threadbare and conclusory allegations that are insufficient to establish a causal connection to the alleged harm. (Id.)

The Court, however, disagrees. At this preliminary stage of proceedings, a plaintiff's complaint need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and all such inferences are to be viewed in the light most favorable to the plaintiff. Iqbal, 556 U.S. at 678 (internal citations omitted); Buck, 452 F.3d at 260. Moreover, Rule 8 of the Civil Rules does not mandate that a complaint contain detailed factual allegations, but rather only requires a claim to be supported by a "short and plain statement" showing that "'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Fed. R. Civ. P. 8(a); see also Phillips, 515 F.3d at 233 (quoting Twombly, 550 U.S. at 555 (further citation omitted)) (internal alteration of text omitted).

Plaintiffs have satisfied these threshold requirements here.  Specifically, Plaintiffs allege that Defendants "knew or should have known that [ ] Holmes had been sexually abused by his birth mother and other adult males[.]" (Compl. ¶ 21.)  The Complaint also contains allegations that the Stewarts made numerous inquiries about Holmes's history prior to adopting him, and had previously declined to adopt sexually abused children because they believed such children posed a risk to the others already residing in the Stewart home.  (Id. ¶¶ 14–16, 23–28.)  Moreover, the Complaint further provides that Bethanna should have investigated and disclosed Holmes's history—particularly in light of the Stewarts's repeated requests—and that a failure to do so was "willful, reckless, and wanton in nature."  (Id. ¶¶ 22–27.)  While the Complaint may not contain detailed

factual allegations related to these claims, notice pleading only requires a claimant to state a claim upon which relief can be granted by the court. Thus, Plaintiffs have satisfied their burden at this preliminary stage of the proceedings, and are therefore entitled to move forward to the discovery phase to adduce further evidence to support their claims. Defendant's Motion to Dismiss the Complaint in its entirety based on a lack of foundation is therefore denied.

### C.      Negligence *Per Se*[5]

A negligence *per se* claim is based on a violation of a statute or regulation that establishes a duty. See Jordan v. City of Phila., 66 F. Supp. 2d 638, 644 (E.D. Pa. 1999) (internal citation omitted). Under Pennsylvania law, a successful claim of negligence *per se* consists of four elements:

> (1) the purpose of the statute must be, at least in part, to protect the interest of the plaintiff individually, as opposed to the public interest; (2) the statute or regulation must clearly apply to the conduct of the defendant; (3) the defendant must violate the statute or regulation; and (4) the violation of the statute must proximately cause the plaintiff's injuries.

See id. (citing Cecile Indus., Inc. v. United States, 793 F.2d 97, 100 (3d Cir. 1986)).

In the instant case, Plaintiffs aver that Defendant violated 55 Pa. Code § 3350.5, a state statute generally governing adoption services in Pennsylvania.[6] Specifically, Plaintiffs allege that

---

[5] Although the title of this section of Bethanna's Motion and Memorandum states that it moves to strike all allegations of "negligence and negligence *per se*" from Plaintiffs' Complaint, the body of this section solely discusses the law related to negligence *per se* actions. The Court will not make Defendant's negligence argument for it. As such, the Court only considers whether Plaintiff's negligence *per se* allegations should be dismissed from suit, and Defendant's request to dismiss Plaintiffs' negligence claim is denied.

[6] Although Plaintiffs have not pled negligence *per se* as a separate Count in their Complaint, they repeatedly reference § 3350.5(k) for the proposition that this statutory section imposed a duty on Defendant to disclose to the Stewarts any information related to Holmes's sexual abuse prior to consummating the adoption. At this stage in the proceedings, the Court is required to give a liberal reading to Plaintiff's Complaint. Thus, the Court considers this general allegation in conjunction with the remainder of Plaintiffs' formally pled causes of action.

Defendant violated its duty under subsection (k) of the statute, which provides that: "[a]doptive parents shall be given such nonidentifying information as is necessary for them to deal with their own, and the child's, needs." 55 Pa. Code § 3350.5(k). Defendant, on the other hand, avers that "[a] Plaintiff may not use a statute, regulation or ordinance as a basis to maintain a claim of negligence per se if [it] is discretionary and does not articulate a specific mandate which must be uniformly followed." (Def.'s Mot. Dismiss 9.)

A review of the Complaint indicates that the Stewarts, but not Madison or Z.M., satisfy the four elements of negligence *per se* at this initial stage of proceedings. The first elements requires the plaintiff to be within the class of persons that the statute was designed to protect. Here, the statutory text indicates that the Stewarts are intended beneficiaries of § 3350.5 because it was designed to protect the interests of adopted children and adoptive parents. On the other hand, given that neither Madison nor Z.M. participated in the adoption of Holmes, they cannot be included among those individuals whom § 3350.5 was designed to protect. As such, all claims of negligence *per se* brought by Madison and Z.M. will be dismissed from suit.

Moreover, the second element of negligence *per se*—that the statute apply to the defendant's conduct—is easily satisfied under these circumstances. The statute governs adoption agencies in Pennsylvania and lists several specific requirements that adoption "service providers" must satisfy. See generally 55 Pa. Code § 3350.5(a–e). As an agency charged with overseeing adoption and foster care placement in the Philadelphia area, the statute logically applies to Bethanna's conduct.

The third element of negligence *per se* provides that the defendant must have violated the statute at issue. Defendant claims that the Stewarts's negligence *per se* claim fails on these grounds because § 3350.5(k) only requires an adoption agency to provide "necessary" nonidentifying information to adoptee parents, and does not specifically require that the agency disclose an

adoptee's sexual abuse history or any psychological conditions during the course of the adoption proceedings. (Def.'s Mot. Dismiss 11.) The facts as alleged in the Complaint, however, make clear that the Stewarts considered information related to Holmes's sexual abuse history necessary for them to deal with their own, and Holmes's, needs. In fact, the Complaint specifically states that Bethanna's statements and representations regarding Holmes were "material" to the Stewarts's decision to adopt him, particularly in light of the fact that they already cared for numerous children, including Z.M. (Compl. ¶ 30.) Moreover, the fact that the Stewarts repeatedly inquired about Holmes's history, and had previously declined to adopt sexually abused children in the past further support this finding. (Id. ¶¶ 14–16, 28.) As such, the facts as alleged in the Complaint could establish a violation of § 3350.5(k) under these circumstances.

Finally, the fourth element requires Plaintiffs to show that Bethanna's failure to inform them of Holmes's own sexual abuse and psychological conditions was the proximate cause of Z.M.'s molestation. In analyzing a negligence *per se* claim under similar factual circumstances at the motion to dismiss stage, the court in Jordan v. City of Philadelphia, 66 F. Supp. 2d 638 (E.D. Pa. 1999) stated that, "[w]hether a party's conduct was a substantial factor in, and thus the proximate cause of, the injury to another is ordinarily a question of fact for the jury. This evidentiary question should be removed from the jury's consideration only where it is evident that reasonable minds cannot differ on the issue." Id. at 644; see also Doe v. Liberatore, 478 F. Supp. 2d 742, 764 (M.D. Pa. 2007) (denying defendants' motion for summary judgment on negligence *per se* claim in child abuse case). The Jordan Court thus declined to remove the proximate cause issue from a jury's consideration given the early stage of the legal proceedings. Similarly, reasonable minds could differ here on the issue of proximate cause and it would be premature to remove such an inquiry from a jury's consideration at this point in time. The Court will therefore assume without deciding that

11

Plaintiffs could likewise satisfy the fourth element of negligence *per se* under these factual circumstances.

As such, Defendant's Motion to Dismiss the Stewarts's claims based on negligence *per se* is denied.  However, to the extent that Z.M. and Madison attempt to bring a cause of action based on negligence *per se*, these claims are dismissed from suit.

### D.     Fraud/Intentional Misrepresentation

Defendant further contends that all allegations of fraud and/or intentional misrepresentation in Plaintiffs' Complaint should be dismissed because the Stewarts[7] fail to plead any facts upon which such allegations could be based.  (Def.'s Mot. Dismiss 12, 13.)

Under Pennsylvania law, the tort of intentional misrepresentation is essentially synonymous with a cause of action based on fraud.  See Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994).  When bringing a claim based upon fraud in federal court, Federal Rule of Civil Procedure 9(b) requires a party to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). The tort of intentional misrepresentation is comprised of six elements

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting in an injury proximately caused by the reliance.

Gibbs, 647 A.2d at 889 (footnote and internal citation omitted).  In Gibbs, the Pennsylvania Supreme Court held that causes of action based on intentional misrepresentation are applicable in the adoption context because "[s]uch application will further the goal of providing prospective parents with full and accurate information about the child, and, at the same time will prohibit adoption agencies from providing false information." Id. at 889–90.  The Supreme Court in Gibbs was, however, cautious

---

[7] Madison and Z.M. do not join the Stewarts in making the fraud/intentional misrepresentations claims in Count I.

not to impose an undue burden on adoption agencies in making this tort applicable to them, and therefore held that the only duty placed upon adoption agencies in this context is "the obligation to refrain from fraudulent and deceitful tactics."  Id. at 890.

Here, the facts as alleged in the Complaint successfully establish the six elements of intentional misrepresentation.  Plaintiffs allege that, as the adoption agency overseeing the Stewarts's adoption of Holmes, Bethanna knew or should have known that Holmes had a history of sexual abuse as a child.  (Compl. ¶¶ 21, 22, 36.)  The Stewarts further claim that, despite their repeated inquiries about Holmes's history, Bethanna continuously represented to them that Holmes was not sexually abused.  (Id. ¶¶ 15, 16, 34–36.)  The Stewarts assert that this information was "material" to their decision to adopt Holmes "because they knew that children who had been abused were a threat to [ ] [the] other children" already residing in their home.  (Id. ¶ 28.)  The Complaint goes on to allege that Bethanna's intentional misrepresentation to the Stewarts was done "with the intent to deceive" and "induce" them into adopting Holmes in order to further its "own interests" of making Holmes their physical and financial responsibility. (Id. ¶ 37–39.)  The Complaint also makes numerous references to Plaintiffs' reliance on Bethanna's statements (see id. ¶¶ 34, 41, 42, 43), and specifically states that "[b]ut for Bethanna's aforementioned false, inaccurate, misleading, and/or materially incomplete statements and representations, . . . the Stewarts would neither have pursued nor completed the adoption[.]"  (Id. ¶ 44.)  Finally, the Stewarts allege that Bethanna's conscious choice to withhold or conceal this information was the proximate cause of their injuries, including their severe psychological harms, extreme embarrassment and humiliation, the current and future costs related to Z.M.'s medical and psychological treatment, and the costs associated with the adoption and support of Holmes while he was in their care.  (Id. ¶ 45.)  Thus, the Court finds that the Stewarts have successfully made out a cause of action based on Bethanna's alleged intentional

misrepresentation.  As such, Defendant's Motion on these grounds is denied.

### E.    Negligent Misrepresentation and Negligent Failure to Disclose

Similarly, the Stewarts assert claims of negligent misrepresentation and negligent failure to disclose against Bethanna in Counts II and III of their Complaint.[8]  While the torts of negligent misrepresentation and intentional misrepresentation are alike in many ways, they differ in that the former does not require the speaker to know that his representation is untrue. Gibbs, 647 A.2d at 890 (citing Restatement (Second) of Torts § 552). Rather, to commit the tort of negligent misrepresentation, the speaker need only fail to make a reasonable investigation into the truth of the representation.  See id.  Under Pennsylvania law, the tort of negligent misrepresentation is comprised of four elements:

> (1) the representor made a misrepresentation of material fact; (2) the representor either knew of the misrepresentation without knowledge as to its truth or falsity, or made the representation under circumstances in which he ought to have known of its falsity; (3) the representor intended the representation to induce another to act on it; and (4) an injury resulted to the party that justifiably relied on the misrepresentation.

See id. (citing Keaton, *Prosser & Keaton on the Law of Torts* § 107 (5th ed. 1984)).

In Gibbs, the Pennsylvania Supreme Court established the law governing the application of negligent misrepresentation and negligent failure to disclose in the adoption context. The Gibbs Court recognized that the tort of negligent misrepresentation applies in this context when "the adoption agency has assumed a duty to tell the truth [by] volunteer[ing] information to prospective parents, but has failed to perform that duty." Id. at 890.  Specifically, the Supreme Court held that "an adoption agency has a duty to disclose fully and accurately to the adopting parents all relevant non-identifying information in its possession concerning the adoptee," and that a failure to do so

---

[8] Madison and Z.M. do not join the Stewarts in the assertion of these claims.

constitutes a negligent misrepresentation and failure to disclose. Id. at 892. The Court, however, qualified its holding by noting that "the duty of adoption agencies for purposes of negligent misrepresentation will only apply where the condition of the child was *foreseeable* at the time of placement so that the agency is blameworthy in making [the] misrepresentation." Id. at 891, 892 (internal citations omitted) (emphasis added). Moreover, the Supreme Court stressed that adoption agencies need only make a "reasonable effort" to determine the accuracy of their representations, and need not offer warranties or guarantees as to the information they provide. Id. at 891, 893.

Several years later, the Pennsylvania Supreme Court applied its holding in Gibbs in Halper v. Jewish Family & Children's Service of Greater Philadelphia, 963 A.2d 1282 (Pa. 2009). Halper dealt with the adoption of a child with several mental health issues. The agency apparently had a file on the child's birth mother, which included a psychiatrist's letter stating that she suffered from undifferentiated schizophrenia, a genetic mental disorder, but failed to disclose this information to the prospective parents prior to the adoption. Id. at 1284. Upon discovery of the information, the parents brought a negligent misrepresentation claim against the adoption agency, claiming that the adoptee child could have received proper psychiatric care if they had been aware of his family medical history. Id. The adoption agency responded that it had no duty to disclose this information because, at the time of the adoption proceedings, schizophrenia was not considered an actual mental disorder and therefore was not a "foreseeable harm" under Gibbs. Id. at 1285–86. The Supreme Court agreed with the agency, finding that, due to the general belief that schizophrenia was not an inheritable mental disorder at the time the adoption was consummated, "there was no foreseeable harm at the time of adoption relating to [the child's] birth mother's condition; [and] even if the information should have been released [ ], failing to provide such information was tempered by the lack of foreseeable harm." Id. at 1286.

15

In the instant case, Bethanna contends that Plaintiffs' negligent misrepresentation and negligent failure to disclose claims must be dismissed under Gibbs and Halper because "there are no facts plead [*sic*] which establish why it was foreseeable at the time of his adoption that [ ] Holmes would allegedly molest another child." (Def.'s Mot. Dismiss 15.)  The Court, however, disagrees. Gibbs requires an adoption agency "to disclose fully and accurately to the adopting parents all relevant non-identifying information in its possession concerning the adoptee" and that an adoption agency make a "reasonable effort" to determine the accuracy of its representations.  647 A.2d at 890, 891.  According to the facts pled in the Complaint, the Stewarts considered information regarding Holmes's history and psychological condition material to their decision to adopt him, and even made several requests for such information. (Compl. ¶¶ 15, 30, 33, 36, 41.)  The Complaint further alleges that Bethanna could have discovered the accuracy of such information upon a simple investigation. (Id. at ¶ 56(e).)  As such, it is unclear at this time whether Bethanna made a "reasonable effort" to determine the accuracy of its representation that Holmes was not sexually abused, and therefore dismissal of Plaintiffs' claims would be inappropriate at this time.

Moreover, the difference between Halper and the instant case is that Halper was brought on appeal to the Pennsylvania Supreme Court after the evidentiary record was closed, while this case remains at the preliminary motion to dismiss stage.  Given that discovery has not yet been conducted here, it remains unknown at this point whether Bethanna was aware of Holmes's sexual abuse history, and, even if it was, whether Holmes's own subsequent abusive conduct was foreseeable in light of this information.

As such, although the holdings of Gibbs and Halper may ultimately prove to be dispositive in this case, this inquiry is best left to the summary judgment stage of proceedings as it is premature at this time.  As such, the Court finds Plaintiffs have pled sufficient facts such that dismissal of their

16

negligent misrepresentation and negligent failure to disclose claims is precluded.

### F.    Intentional Infliction of Emotional Distress

To satisfactorily assert a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show that the defendant's (1) extreme and outrageous conduct, (2) intentionally or recklessly, (3) caused, (4) severe emotional distress. Jordan v. City of Phila., 66 F. Supp. 2d 638, 642 (E.D. Pa. 1999) (further citation omitted). Liability for IIED claims "'does not extend to mere insults, threats, annoyances, petty oppressions, or other trivialities.'" Lane v. Cole, 88 F. Supp. 2d 402, 405 (E.D. Pa. 2000) (citing Kazatsky v. King David Mem'l Park, Inc., 527 A.2d 988, 991 (1987)) (further citation omitted).

In order to satisfy the first element of IIED, the defendant's conduct must have been "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency as to be regarded as atrocious and utterly intolerable in a civilized community." Jordan, 66 F. Supp. 2d at 642 (internal citation omitted). If reasonable persons could differ as to the extremity of the conduct, then the issue should proceed to a jury to determine whether the conduct was sufficiently outrageous to incur liability. See id. In Jordan, claimants who had been sexually abused by the son of their foster parents brought an IIED claim against the adoption agency. Id. at 640–41. The claimants averred that the agency knew or should have known that the son was abusive because it had allegedly received verbal notification of his prior placement on a child abuse listing. Id. at 642. The court found that the plaintiffs' contentions were "strong enough to support a finding by the trier of fact that the defendants' actions constituted extreme and outrageous conduct." Id. at 642 (internal citation omitted).

This Court finds Jordan instructive here. Similar to the claimants in that case, Plaintiffs here allege that Bethanna knew or should have known that Holmes was sexually abused and was likely

to sexually abuse other children, and "the conduct of the Defendant in concealing [this] information from the Stewarts was outrageous and intentional."  (Pl.'s Resp. Opp'n 17.)  If taken as true, reasonable persons could differ as to the extremity of this conduct.  As such, the Court will assume that Plaintiffs could satisfy the first element of IIED.

The next element requires Plaintiffs to show that Bethanna's conduct was intentional or reckless.  Conduct is considered intentional when the actor intended to cause the consequences of his acts, or believed the consequences were substantially certain to occur.  Jordan, 66 F. Supp. 2d at 643 (citing Restatement (Second) of Torts § 8A).  As applied here, Bethanna's alleged "act" was its concealment or failure to disclose Holmes's sexual abuse history. The alleged ultimate "consequences" of this wrongful act would be Z.M.'s molestation. Plaintiffs have pled no facts indicating that Bethanna intended Z.M. to be molested, or that it believed that this action was substantially certain to occur.

As such, the only way Plaintiffs can satisfy the second element of IIED is if they can show that Bethanna's conduct was reckless.  An actor's conduct is considered reckless "if he does an act or intentionally fails to do an act which it is his duty to the other to do."  Jordan, 66 F. Supp. 2d at 643 (citing Restatement (Second) of Torts § 500).  In this case, Bethanna had a statutory duty under 55 Pa. Code § 3350.5(k) to provide the Stewarts with "such nonidentifying information as is necessary for them to deal with their own, and the child's needs."  According to the Complaint, the Stewarts specifically requested information about Holmes's background because they believed this was necessary for them to deal with their own needs, as well as those of Holmes and the other children already living with them.  (Compl. ¶¶ 14–16, 49, 52–56, 61, 63.)  Accepting the facts alleged as true, if Bethanna intentionally failed to disclose or concealed this information from the Stewarts, then such conduct could theoretically fall within the definition of recklessness, such that

the second element would be satisfied under these circumstances.

The third element of IIED provides that the defendant's conduct must have caused the emotional distress.  Here, the direct cause of Plaintiffs' emotional distress would be derived from the actions of Holmes, not Bethanna. However, it has been recognized that the extreme and outrageous conduct required for this tort may arise from an actor who is in a relationship with another which gives him the power to affect the other's interests.  Jordan, 66 F. Supp. 2d at 643 (citing Restatement (Second) of Torts, § 46 cmt. e).  Here, Bethanna—as the agency overseeing the adoption of Holmes—was in a relationship with the Stewarts.  The Stewarts apparently made it clear that they were interested in Holmes's background, and Bethanna's decision to disclose or not disclose such information gave it power to affect this interest.  Thus, it is plausible that Bethanna's conduct caused the Stewarts's emotional distress.  Bethanna did not, on the other hand, maintain a relationship with either Z.M. or Madison since neither was a party to the adoption proceedings.  Thus, Bethanna had no power to affect their interests, and therefore cannot be the cause of their alleged emotional distress for IIED purposes.  In turn, Z.M. and Madison fail to satisfy the third element, and their IIED claims are dismissed from suit.

Finally, the fourth element requires the emotional distress suffered by the plaintiffs to be severe.  It has been recognized that severe emotional distress includes: "anguish, mental or nervous shock, . . . highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and nausea."  Jordan, 66 F. Supp. 2d at 643 (citing Restatement (Second) of Torts, § 46 cmt. j).  Here, the Stewarts aver that they suffered "severe and permanent emotional distress and related physical injuries," including "severe psychological harm, mental distress, [and] extreme embarrassment and humiliation."  (Compl. ¶¶ 45(b), 85.)  These allegations substantiate a claim of IIED.  The Stewarts's IIED claim is therefore sufficient to survive a motion to dismiss.

### G.      Negligent Infliction of Emotional Distress

In Pennsylvania, a cause of action for negligent infliction of emotional distress ("NIED") is limited to four factual scenarios:

> (1) situations where the defendant had a special contractual or fiduciary relationship with the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; and (4) the plaintiff observed a tortious injury to a close relative.

Shulick v. United Airlines, No. Civ.A.11-1350, 2012 WL 315483, at *6 (E.D. Pa. Feb. 2, 2012) (citing Toney v. Chester Cnty. Hosp., Nos. 60 MAP 2009, 61 MAP 2009, 2011 WL 6413948, at *11 (Pa. 2011); Wardlaw v. City of Phila. Street's Dep't, 378 F. App'x 222, 225 (3d Cir. 2010)).  The only potential factual scenarios arguably present in the instant case are: (1) NIED based  the "special relationship" theory, and (2) NIED based upon physical impact.[9]  The Court considers the latter of these two scenarios first.

A plaintiff can successfully establish an NIED claim if he can show that he suffered an injury

---

[9] Count V, the NIED claim, is brought by all four Plaintiffs collectively.  In its Motion to Dismiss, Bethanna moves to have Count V dismissed in its entirety on the basis that none of the four Plaintiffs can successfully establish an NIED claim under Pennsylvania law.  (Def.'s Mot. Dismiss 20.)  The crux of Plaintiffs' argument supporting their NIED claim is that "[a] contractual and fiduciary relationship existed *between Bethanna and the Stewarts*, in which Bethanna owed a duty of care to the Stewarts because it was foreseeable that Bethanna's actions could cause severe emotional, psychological and physical harm to the Stewarts." (Compl. ¶ 75 (emphasis added).)  Neither the Complaint nor Plaintiffs' Response in Opposition discusses the basis of an NIED claim brought by Madison or Z.M.  The Court recognizes that this legal action is still in the preliminary stages of litigation, and that it therefore must view the claims plead in the Complaint in the light most favorable to the Plaintiffs at this time.  As such, even though Plaintiffs do not explicitly discuss Z.M.'s emotional distress in their Complaint and subsequent briefing, to the extent that he could establish an NIED claim here, this is discussed above in the body of this Memorandum.  The same, however, cannot be said of an NIED claim asserted by Madison.  Even if Plaintiffs had pled facts attempting to show that Madison was a victim of NIED, her claim would nonetheless fail on legal grounds because she did not maintain a special relationship with Bethanna, did not suffer a physical impact, was not in the zone of danger, and did not observe a tortious injury to a close family member.  As such, Madison is dismissed as a Plaintiff from Count V.

and subsequent emotional distress as a result of physical impact caused by an act of the defendant's negligence, regardless of the severity of the impact.  See Tomikel v. PennDOT, 658 A.2d 861, 864 (Pa. Commw. Ct. 1995).  In this case, Z.M. is the only Plaintiff that could potentially make out an NIED claim according to this theory.  In the Complaint, Plaintiffs aver that Z.M. suffered serious physical injuries and severe emotional trauma as a result of his molestation by Holmes.  (See Compl. ¶¶ 45(a), 77.)  This allegation is sufficient to survive the requirements of notice pleading.  Whether or not Z.M.'s suffering was actually caused by an act of Bethanna's negligence is a determination that will be born out during discovery, and is a matter for the jury's consideration.  See Tomikel, 658 A.2d at 864 ("Where it is definitely established that injury and suffering were proximately caused by an act of negligence, and any degree of physical impact, however slight, can be shown, recovery for such injuries and suffering is a matter for the jury's determination.").  As such, Z.M.'s NIED claim withstands dismissal.

The Court next considers whether the Stewarts can successfully establish an NIED claim predicated on the "special relationship" theory.  In order to make out an NIED claim under this theory, a plaintiff "must demonstrate that a special contractual or fiduciary relationship exists between the parties creating 'an implied duty on the part of the defendants to care for the plaintiffs' emotional well-being,' and the plaintiffs suffered 'extreme emotional distress' as a result of the defendants' breach of that duty."  Shulick, 2012 WL 315483, at *6 (citing Toney, 2011 WL 6413948, at *11, 16)) (internal alteration of text omitted). In Toney v. Chester County Hospital, the Supreme Court of Pennsylvania recently clarified that not all contractual and fiduciary relationships qualify as special relationships for NIED purposes. 2011 WL 6413948, at *11 (Pa. 2011).  More specifically, the Supreme Court held that the only relationships sufficient to establish a duty of care for the plaintiff's emotional well-being are those "involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach."  Id. at *9.  Although the Toney Court left

open to inquiry which exact types of relationships qualify under this theory, it listed the doctor-patient relationship and the relationship between a funeral director and widower as examples of special relationships in which one party has an implied duty to care for the emotional well-being of the other.  Id. at *11.

In this case, Plaintiffs allege that a special relationship exists between adopting parents, *i.e.*, the Stewarts, and adoption agencies, *i.e.*, Bethanna, and that there is an "implied duty on the part of the adoption agency to care for the well-being of the adoptive parents." (Pls.' Resp. Opp'n 19.) Plaintiffs aver that Bethanna breached this duty when it failed to disclose Holmes's abuse to the Stewarts.  (Id.)  The logic of Plaintiffs' argument follows that, as a result of this failure to disclose, it was foreseeable that Holmes would rape two-year old Z.M., which subsequently caused the Stewarts to suffer severe emotional distress, including "psychological harm, mental distress, extreme embarrassment and humiliation[.]" (Compl. ¶ 45(b).) At this stage of the proceedings, it remains unknown whether or not Bethanna actually knew and/or negligently failed to disclose Holmes's abusive history.  The discovery process will undoubtedly unveil such information, as well as whether it was foreseeable that Holmes would sexually abuse another child as a result of his own molestation. As such, dismissal of this claim would be premature at this time.  Therefore, the Stewarts's NIED claim is sufficient to survive a motion to dismiss.

## H.    Allegations of Recklessness for Punitive Damage Purposes

The legal standard for punitive damages for state law claims is a matter of state law.  See Griffiths v. CIGNA Corp., 857 F. Supp. 399, 409–10 (E.D. Pa. 1994), aff'd, 60 F.3d 814 (3d Cir. 1995) (further citation omitted).  The Supreme Court of Pennsylvania has adopted Section 908(2) of the Restatement (Second) of Torts, which allows punitive damages for "conduct that is outrageous because of the defendant's evil motive or his reckless indifference to the rights of others." Rizzo v. Haines, 555 A.2d 58, 69 (Pa. 1989) (quoting Restatement (2d) Torts § 908(2) (1977)).  The Third

Circuit has recognized that Pennsylvania strictly interprets the recklessness standard.  Burke v. Maasen, 904 F.2d 178, 181 (3d Cir. 1990).  More specifically, "[a] court may award punitive damages only if the conduct was malicious, wanton, reckless, willful, or oppressive."  Rizzo, 555 A.2d at 69 (citing Chambers v. Montgomery, 192 A.2d 355, 358 (Pa. 1963)).  In making such an inquiry, a court must consider the conduct at issue, including the motive of the wrongdoers and the relations between the parties.  Feldman v. Trust Co. Bank, No. Civ.A.93-1260, 1993 WL 405831, at *3 (E.D. Pa. Oct. 4, 1993) (internal citations and alteration of text omitted).  Moreover, the tortfeasor's state of mind is also relevant, and his actions must have been intentional, reckless, or malicious.  Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 874 (E.D. Pa. 2000).

Although Plaintiffs do not assert a separate Count of recklessness against Bethanna in their Complaint, at various points they sporadically contend that Bethanna's conduct was "willful," "reckless," and "wanton in nature."  (See Compl. ¶¶ 25, 39, 40, 68, 77, 79, 84, 93.)  Although it is not crystal clear from the face of Plaintiffs' Complaint whether Bethanna's conduct rises to the level of recklessness, the Court is required to view the allegations in the light most favorable to the Plaintiffs at this point in time.  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

Moreover, in order to determine whether Plaintiffs have sufficiently pled a cause of action based on Bethanna's recklessness, the Court must consider "the conduct itself[,] together with all the circumstances including the motive of the wrongdoers and the relations between the parties" in making such an inquiry.  Feldman, 1993 WL 405831, at *3 (internal citations and alteration of text omitted).  Here, Plaintiffs aver that Bethanna intentionally misrepresented and "concealed" Holmes's prior history, despite knowing or being able to easily obtain such information and the Stewarts's repeated requests for it.  (Compl. ¶¶ 25, 35, 48, 56.)  Plaintiffs allege that this conduct was motivated by Bethanna's self-interest in "inducing the Stewarts to proceed with the adoption of Dalon Holmes" and "evidenced a deliberate and willful desire to further Bethanna's own interests and objectives at

the expense of the Stewarts." (Id. ¶¶ 38, 39.)  While the evidence unearthed during discovery may ultimately lead to a different conclusion, if these allegations are ultimately determined to be true, they could support a claim of recklessness.  As such, Plaintiffs' allegations at this stage of the proceedings survive dismissal.[10]

## IV.    CONCLUSION

For the reasons set forth above, the Court finds that Defendant's Motion to Dismiss Plaintiffs' Complaint in its entirety is denied, and Defendant's Motion to Strike Specific Allegations from Plaintiffs' Complaint is granted in part and denied in part as follows in this Memorandum and accompanying Order.

---

[10] Defendants also move to strike all allegations against Bethanna sounding in professional liability for failure to file a certificate of merit.  (Def.'s Mot. Dismiss 20.)  Under Pennsylvania law, in an action based upon an allegation that a licensed professional deviated from a professional standard, a plaintiff's attorney is required to file a certificate of merit within 60 days of the filing the complaint which addresses the professional standard of care.  See Pa. R.C.P. 1042.3(a)(3).  Plaintiffs filed such a certificate of merit on April 6, 2012—thirty-five days after the filing of their Complaint.  (See Docket No. 8). As such, Defendant's Motion on this ground is denied as moot.